# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TIMOTHY R. WOOLEY,
      Plaintiff,

      vs

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:11-cv-802

Spiegel, J.

Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 5) and the Commissioner's

Memorandum in Opposition (Doc. 8).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in February 2009, alleging disability since

September 28, 2006, due to asthma, post traumatic stress disorder ("PTSD"), and a panic

disorder. (Tr. 190). Plaintiff's applications were denied initially and upon reconsideration.

Plaintiff, through counsel, requested and was granted a de novo hearing before Administrative

Law Judge (ALJ) Christopher B. McNeil. Plaintiff and a vocational expert (VE) appeared and

testified at the ALJ hearing. On May 20, 2011, the ALJ issued a decision denying plaintiff's DIB

and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making

the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2008.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since September 28, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: chronic obstructive pulmonary disease, asthma, degenerative disc disease, and depressive disorder-NOS (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), in that he can occasionally lift 50 pounds, frequently lift 25 pounds, push or pull to the same extent using hand or foot control, stand or walk about 6 hours, and sit for about 6 hours. However, he cannot climb ladders, ropes or scaffolds, must avoid concentrated exposure to extreme cold, and to fumes, odors, dust or gases, and due to mental impairments, he can understand and remember simple instructions, and sustain attention to complete simple repetitive tasks where production quotas are not critical.

3

6. The [plaintiff] is capable of performing past relevant work as an injection machine operator as generally performed, and a food service worker as actually and generally performed.[1] This work does not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 28, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-24).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[1]Plaintiff was 54 years old at the time of the ALJ's decision. (Tr. 20). His past relevant work was as a medium truck delivery driver, a light food service worker, a medium janitor, a light injection machine operator performed at the heavy level, and a medium semi-skilled tow truck driver. (Tr. 24, 71-72).

4

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred in determining plaintiff's RFC; (2) the ALJ erred by not finding that plaintiff's use of a cane was necessary; (3) the ALJ improperly weighed the medical opinions in the record; (4) the ALJ improperly assessed plaintiff's credibility and subjective complaints of pain; and (5) the ALJ erred vocationally in using improper hypothetical questions to the vocational expert.

### 1. The ALJ's RFC is not supported by substantial evidence.

As they are related, assignments of error one and two will be considered together. Plaintiff contends the ALJ erred in adopting an RFC for medium work when the ALJ said he gave "great weight" to the opinions of the state agency doctors, including Dr. Albert, but then failed to credit Dr. Albert's findings that plaintiff was limited to lifting 10-20 pounds and needed a hand-held assistive device for ambulation based on the EMG results. (Doc. 5 at 3-4).

Plaintiff argues the limitations found by Dr. Albert would limit plaintiff to sedentary work and, if so limited, plaintiff would be disabled at age 50 in 2008 under grid Rule 201.14.

Dr. Neiger, a non-examining state agency physician, assigned plaintiff an RFC for medium work, opining that plaintiff had the ability to lift 25 to 50 pounds. (Tr. 505). On reconsideration, Dr. Albert, another non-examining state agency physician, stated he "affirmed" the RFC for medium work (Tr. 688), but then drafted an RFC assessment form that limited plaintiff to lifting 10 pounds frequently and 20 pounds occasionally (Tr. 691), which would limit plaintiff to light work as defined under 20 C.F.R. § 404.1567(b). The ALJ gave "great weight" to the opinions of Drs. Neiger and Albert that plaintiff could perform a range of "medium work" (Tr. 20), without addressing Dr. Albert's specific finding that plaintiff could lift only 10 to 20 pounds. (Tr. 691).

The Commissioner concedes that on the same day that Dr. Albert indicated he was affirming Dr. Neiger's opinion for medium work, he also gave an opinion for light work by limiting plaintiff to lifting 10 to 20 pounds. (Doc. 8 at 7, n.4). The Commissioner essentially argues that this is harmless error, given the vocational expert's testimony that plaintiff's past relevant work was light in exertion. (*Id.*, citing Tr. 24, 71-74). The Court agrees.

The VE identified plaintiff's past work as a food service worker and injection machine operator as light under the Dictionary of Occupational Titles. (Tr. 300; *see also* Tr. 71-74). Thus, even if plaintiff was limited to lifting 20 pounds occasionally and 10 pounds frequently as reflected in Dr. Albert's RFC assessment (Tr. 691), plaintiff would have the RFC to perform his past work as it is generally performed in the economy.[2] Therefore, this is not reversible error.

---

[2]To prove disability, plaintiff must prove an inability to return to his former type of work and not just to his particular former jobs. *Studaway v. Sec. of HHS*, 815 F.2d 1074, 1076 (6th Cir. 1987) (citing *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986)). "Former type" of work means the general kind of work, *e.g.,* janitorial work, that

Plaintiff also argues that the ALJ erred in evaluating plaintiff's use of a cane in determining plaintiff's RFC. The ALJ determined that plaintiff's need for a cane to walk was not supported by credible medical evidence. The ALJ stated that the physical therapist who provided the cane out of the physical therapy stock "was not shown to be credentialed to write prescriptions." (Tr. 18, citing Tr. 878, 525-528). The ALJ further determined there was no additional documentation for prescription use of a cane and no mention by a treating source for medical necessity. (Tr. 18). Finally, the ALJ acknowledged that the "DDS physician [Dr. Albert] found a cane to be a medical necessity," but found that "the report refers to a diagnosis that is not reflected in the record." (Tr. 18, citing Tr. 692).

The ALJ's finding in this regard is not substantially supported by the record. Dr. Albert, the state agency physician who reviewed the record on reconsideration, stated that plaintiff could walk for about six hours in an eight-hour workday, but that a "medically required hand-held assistive device is necessary for ambulation." (Tr. 691). Dr. Albert's assessment states, "A follow-up PCP [primary care physician] note dated 10/09 from the VA indicated a cane was needed for extended walking and that he has pain that radiates down his right leg and numbness in both legs." (Tr. 692). The ALJ discounted this opinion, stating it referred to a report of a "diagnosis that is not reflected in the record." (Tr. 18, citing Tr. 692). The diagnoses reflected in the primary care physician's report, however, are in fact "reflected in the record" contrary to the ALJ's decision.

---

plaintiff used to perform. *Studaway*, 815 F.2d at 1076. In other words, the ALJ must consider whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Garcia v. Sec. of HHS*, 46 F.3d 552, 557 (6th Cir. 1995) (citing Social Security Ruling 82-61). A finding that a plaintiff has the RFC to meet the physical and mental demands of work that the plaintiff previously performed, either as actually performed by the plaintiff or as the work is customarily performed throughout the economy, is generally a sufficient basis for a finding of "not disabled." Social Security Ruling 82-62.

The evidence shows that when plaintiff was examined on October 13, 2009 by Dr. Elizabeth Aubry, a primary care physician at the VA Medical Center, he was diagnosed with low back pain and leg numbness, and that Dr. Aubry made a "Consult Request" for a cane for plaintiff. On that date, plaintiff reported that pain radiated down his right leg with numbness in both legs, right greater than left, and that he needed a cane for extended walking. (Tr. 559). Plaintiff also reported that he underwent physical therapy which made his pain worse. Physical examination revealed "numbness with monofilament testing plantar and dorsal aspect of both feet extending above ankle strength grossly intact bilaterally, mild difficulty standing on heels but is able to walk on toes without difficulty. ROM [range of motion] spine mildly limited with flexion and extension, no pain with facet loading." (Tr. 560). Dr. Aubry prescribed medication and ordered an EMG, which showed evidence of right-sided sensorimotor peroneal mononeuropathy. (Tr. 550-52, October 28, 2009 EMG). Dr. Aubry noted plaintiff declined physical therapy at that time but would like a cane and handicap placard. (Tr. 562). Plaintiff was then referred by Dr. Aubry to the physical therapy department for a cane and instructions on its use. (Tr. 525-26, 555-56). The VA records reflect that a "consult" for a cane was received on October 13, 2009 from Dr. Aubry. (Tr. 526). Dr. Aubry signed off on the consult request, signifying that as the referring provider she agreed with the plan of care provided. (Tr. 527).

The ALJ's decision appears to be premised on the assumption that the cane was prescribed by a physical therapist, when the above records show that the referral for a cane was made by plaintiff's primary care physician and not at the behest of the physical therapist. The ALJ does not discuss Dr. Aubry's contemporaneous notes relating to the "consult request" for a cane, and the Court cannot determine whether the ALJ was unaware of the notes supporting the

8

medical necessity for a cane or simply ignored them. Dr. Aubry's diagnosis of low back pain is consistent with the degenerative disc disease that the ALJ found as a severe impairment, and the leg numbness was confirmed by EMG testing as explained above. Dr. Albert, the state agency physician who opined that a "medically required hand-held assistive device is necessary for ambulation" (Tr. 691) certainly read Dr. Aubry's notes this way. The ALJ's reliance on the purported prescription of a cane by a physical therapist and an unreflected "diagnosis" are not supported by the record evidence discussed above. This is significant because plaintiff's need for a cane may impact his ability to perform the medium and light work identified by the VE. The VE testified that plaintiff would be limited to sedentary work if he needed an ambulatory device to walk. (Tr. 74). In determining the vocational implications of the use of a cane by a claimant, Social Security Ruling 96-9p requires "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, *and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). . . .* For example, if a medically required hand-held assistive device is needed only for *prolonged ambulation*, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded." (Emphasis added). The evidence includes a report by plaintiff that he needed a cane for extended walking. (Tr. 559). However, the record does not include a medical opinion addressing the particular circumstances under which an assistive device is needed as required by SSR 96-9p. Because this question is not answered by the instant record, a remand for further evidence is required.

9

### 2. The ALJ's decision weighing the medical opinions in this case is supported by substantial evidence.

Plaintiff's third assignment of error asserts the ALJ erred by giving the most weight to the reviewing doctors and the least weight to plaintiff's treating doctors at the VA.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. §§ 404.1527(c), 416.927(c)[4]; *see also Blakley v. Comm'r*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walters*, 127 F.3d at 529; *Shelman*, 821 F.2d at 321.

In terms of plaintiff's physical impairments, plaintiff's treating primary care physician, Dr. Aubry, assessed plaintiff's abilities to perform work-related activities in April 2011. (Tr. 874-76). Dr. Aubry opined that plaintiff could lift forty pounds occasionally and ten pounds frequently; stand/walk for 3-5 hours total in a work day for one hour at a time; and sit for 5-8 hours for one hour at a time without interruption. Dr. Aubry concluded that plaintiff "would likely have difficulty with many types of sustained full time work" and could "only do light,

---

[4]Regulations 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion were previously found at §§ 404.1527(d) and 416.927(d).

sedentary activities." (Tr. 876).

The ALJ gave "little weight" to the treating physician's opinion for several reasons: (1) Dr. Aubry simply repeated the functional limitations identified by Mr. Hayes, an occupational therapist, seven months earlier; Mr. Hayes was not a physician; and Mr. Hayes stated his opinion was only a one-time assessment that was not necessarily indicative of plaintiff's true level of functioning; (2) Dr. Aubry included no functional limitations from plaintiff's pulmonary impairment which would be expected if she had a true treating relationship with plaintiff; and (3) the checklist form completed by Dr. Aubry appeared to be completed as an accommodation to plaintiff and did not include a rationale to support its conclusions.

Plaintiff asserts Dr. Aubry's opinion is supported "by the MRI of the back and the EMG showing right and left leg abnormalities (Tr. 829-830)," obesity, "limited breathing on pulmonary functional studies (Tr. 474-477)," and "missing reflexes in his legs and feet on exam (Tr. 830)." (Doc. 5 at 6-7). While this may be so, plaintiff's argument does not address the deficiencies with Dr. Aubry's opinion identified by the ALJ. The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Harris*, 756 F.2d 431 (6th Cir. 1985). As the ALJ determined, Dr. Aubry failed to include *any* basis for her conclusions besides "LBP" [low back pain]. Dr. Aubry did not identify specific tests or clinical findings in support of her assessment, and given her apparent copying of Mr. Hayes' assessment, the ALJ properly relied on the lack of a supporting rationale in Dr. Aubry's report to discount the treating physician's opinion.

Plaintiff also argues there was nothing wrong with Dr. Aubry's "review" of the form

11

completed by Mr. Hayes, the occupational therapist, as it added "consistency" to the work limitations. (Doc. 5 at 8). Yet, the ALJ's criticism on this point focuses on the apparent absence of an independent opinion by the treating physician who gave no rationale for her opinion and who merely copied the findings of the occupational therapist – a non-medical source[5] – who was equivocal about plaintiff's true level of functioning. (Tr. 21). The ALJ did not err in this regard.

Plaintiff also takes issue with the ALJ's criticism that Dr. Aubry included no limitations from plaintiff's severe pulmonary impairment, asserting that Dr. Aubry "would also be aware of breathing impairments." (Doc. 5 at 8). Plaintiff has failed to present any evidence in support of this argument or explain how Dr. Aubry necessarily considered plaintiff's pulmonary problems when assessing his functional limitations. The Court therefore rejects this argument.

For these reasons, the ALJ's assessment of Dr. Aubry's medical assessment of physical abilities is supported by substantial evidence.

Plaintiff also argues the ALJ erred in determining plaintiff had the mental residual functional capacity for simple routine tasks where production quotas are not critical. Plaintiff contends the ALJ erred by giving more weight to the opinions of the one-time consultative examiner, Dr. Nelson, and the state agency reviewer, Dr. Tishler, than to the opinion of plaintiff's treating psychiatrist, Dr. Barnett.

---

[5] An occupational therapist is not an acceptable medical source under the Social Security regulations. *Compare* 20 C.F.R. § 404.1513(a) (acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists), with 20 C.F.R. § 404.1513(d)(1) (medical sources not listed in § 1513(a), such as nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists are considered to be "other sources" rather than "acceptable medical sources"). *See also Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358, 363 (6th Cir. 2001) (physical therapist's report not afforded significant weight because therapist not recognized as an acceptable medical source); *Jamison v. Comm'r*, No. 1:07-cv-152, 2008 WL 2795740, at *10 (S.D. Ohio July 18, 2008) (Dlott, J.) (same). Because occupational therapists are not considered acceptable medical sources under the regulations, the ALJ was not required to give any special deference to the therapist's functional capacity evaluation.

Dr. Barnett, plaintiff's treating psychiatrist at the VA Medical Center, completed a Mental Impairment Questionnaire in October 2010. (Tr. 752-58). Dr. Barnett reported that she began treating plaintiff in January 2009 and saw plaintiff every month for psychopharmacologic management and supportive psychotherapy. Plaintiff's diagnoses included PTSD, major depressive disorder, recurrent, and a history of polysubstance abuse. Dr. Barnett reported that plaintiff's highest GAF score in the last year had been 55 and his GAF score at the time of the October 2010 report was 48. (Tr. 753). Dr. Barnett noted that based on treatment and medication, plaintiff has had a partial reduction in the intensity of his symptoms. (*Id.*). Dr. Barnett opined that plaintiff's PTSD affected his ability to interact with the public and had resulted in a low stress tolerance. (Tr. 756). Dr. Barnett also opined that plaintiff had no-to-mild restrictions in his activities of daily living, marked restrictions in his social functioning and ability to maintain concentration, persistence or pace, and one to two episodes of decompensation within the prior 12 months, each of at least two weeks' duration. (Tr. 757). She also noted that plaintiff had experienced one or two extended episodes of decompensation. (*Id.*). Dr. Barnett opined that plaintiff was unable to meet competitive standards for unskilled work in the following areas: maintain attention for a two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond

13

appropriately to changes in a routine work setting; and deal with normal work stress. (Tr. 755). Dr. Barnett also reported that plaintiff had a residual disease process that had resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause him to decompensate. (Tr. 757). Dr. Barnett estimated that plaintiff would miss more than four days of work per month as a result of his impairments or treatment. (Tr. 758). Dr. Barnett concluded that plaintiff's work-related limitations have been in effect since January 2009, when she first met with plaintiff. (*Id.*).

The ALJ determined that Dr. Barnett's assessment was not entitled to any significant weight because it was not consistent with the medical evidence as a whole; not well-supported by other medical assessments; largely based on plaintiff's subjective complaints; not consistent with her own treatment notes; and not consistent with the credible portion of the activities of daily living evidence. (Tr. 16, 22-23).

Plaintiff argues the ALJ erred because Dr. Barnett's assessment is consistent with her treatment records, stating that Dr. Barnett "noted . . . PTSD on numerous visits along with GAF scores of 50 or less." (Doc. 5 at 7, citing Tr. 574-575, 579, 587, 594-595, 605, 648, 676, 740-742, 748, 795, 802). The Court disagrees.

First, plaintiff's PTSD diagnosis does not, in itself, translate into clearly definable functional restrictions, much less denote an inability to perform work requiring the ability to understand and remember simple instructions and sustain attention to complete simple repetitive tasks where production quotas are not critical. *See Foster v. Bowen*, 853 F.2d 483, 488-89 (6th Cir. 1988) (relevant consideration in disability case is not claimant's diagnoses, but functional limitations caused by impairments). This diagnosis, without more, does not add to the

14

"consistency" of Dr. Barnett's assessment.

Second, the ALJ did not err in finding plaintiff's GAF scores of limited evidentiary value. (Tr. 23). While plaintiff correctly points out that he had GAF scores of 50 or less, which indicated "serious" symptoms, the record shows he also had scores of 51 and above, which indicated "moderate" symptoms.[6] (*See, e.g.*, Tr. 555, 576, 721). The Commissioner has also "declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (quoting *Wind v. Barnhart*, 133 F. App'x 684, 691-92 n.5 (11th Cir. 2005)) (quoting 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)). *See also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) ("[A]ccording to the [Diagnostic and Statistical Manual's] explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning. . . . [W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.") (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). The ALJ reasonably gave more weight to the "objective details and chronology of the record, which more accurately described" plaintiff's impairments and limitations. (Tr. 23). Where, as here, other substantial evidence supports the ALJ's conclusion, the Court may not reverse the ALJ's decision even where the GAF scores were often in the sub-50 range. *Kornecky*, 167 F. App'x at

---

[6] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. The DSM–IV categorizes individuals with scores of 41 to 50 as having "serious" symptoms. *Id.* at 32. Individuals with scores of 51–60 are classified as having "moderate" symptoms. *Id.*

511.

Third, a review of Dr. Barnett's treatment records over the one and one-half year period leading up to her functional assessment in October 2010 shows that Dr. Barnett provided virtually identical (and sometimes verbatim) narratives each time she saw plaintiff, strongly suggesting that Dr. Barnett lacked any particular insight into plaintiff's condition and simply copied her prior treatment notes.  (Tr. 415-23, 427-32, 544-46, 574-76, 588-597, 602-608, 647-648, 675-677, 725-732, 740-744, 748-751, 812-14, 825-28, 833-35, 837-38, 840-42).

Fourth, as the ALJ pointed out, Dr. Barnett's notes often contradicted her psychiatric assessment.  For example, while Dr. Barnett opined that plaintiff had marked limitation in his ability to maintain concentration, persistence or pace and was unable to maintain attention for a two hour segment, Dr. Barnett's treatment notes show she consistently assessed plaintiff's concentration as "good" on mental status examination.  (Tr. 416, 422, 429, 431, 545, 575, 590, 595, 603, 607, 648, 676, 726, 741, 749, 795, 802, 814, 827, 834, 838, 841).  Dr. Barnett also opined that plaintiff had "no useful ability" to understand and remember detailed instructions, but her mental status examinations always rated plaintiff's memory/recall as "good."  (Tr. 416, 422, 428, 431, 545, 575, 590, 595, 603, 607, 648, 676, 726, 741, 749, 795, 802, 814, 826, 834, 838, 841).  Dr. Barnett also opined that plaintiff had experienced multiple episodes of decompensation (Tr. 757), but as the ALJ accurately found there is no record evidence of a hospitalization or other extensive outpatient treatment for such episodes.  (Tr. 16).  While plaintiff argues that Dr. Barnett's notes are consistent with her functional assessment, counsel has not directed the Court's attention to any specific treatment notes, clinical findings, or other evidence in support of this argument, aside from the PTSD diagnosis and GAF scores.

16

Therefore, the ALJ's finding that Dr. Barnett's functional assessment was not consistent with her own treatment notes is substantially supported by the record.

Plaintiff also argues that because Dr. Barnett noted distractibility and anxiety from PTSD in her assessment (Tr. 756), "[t]hese alone would prevent [plaintiff] from working. . . ." (Doc. 5 at 7). Counsel offers no evidentiary support or explanation for this argument. As counsel has failed to develop this argument, the Court declines to speculate on its import.

Plaintiff further argues that Dr. Tishler, the state agency psychologist who reviewed the record in October 2009, was without the benefit of Dr. Barnett's October 2010 assessment or records subsequent to the date of his report. Yet, because Dr. Barnett's narratives and mental status examinations after October 2009 were essentially identical to the pre-October 2009 narratives that Dr. Tishler reviewed, the ALJ's reliance on Dr. Tishler's assessment was not in error. Plaintiff has neither argued nor presented evidence that Dr. Barnett's post-October 2009 progress notes show a deterioration of plaintiff's condition or support restrictions greater than those imposed by Dr. Tishler.

Plaintiff also takes issue with the ALJ's statement that Dr. Barnett relied heavily on plaintiff's subjective reports of symptoms and limitations in discounting Dr. Barnett's functional assessment, contending that the fields of psychology and psychiatry are by definition dependent upon the subjective presentations of the patient. (Doc. 5 at 9). Yet, Dr. Barnett's functional assessment itself appears to support the ALJ's assertion. (*See* Tr. 756: "patient *describes* regular distractibility and [illegible] memory lapses at home, but *states* able to maintain attention for short periods. . . .") (emphasis added). In addition, the ALJ properly considered the extent to which Dr. Barnett's opinion was supported by the objective and clinical evidence, as

17

opposed to plaintiff's subjective allegations alone. *See* 20 C.F.R. § 404.1527(c)(3). Objective evidence in the psychiatric/psychological context include "medical signs," 20 C.F.R. § 404.1512(b)(1), which are defined as "*psychological abnormalities which can be observed, apart from your statements* (symptoms). . . . Psychiatric signs are *medically demonstrable* phenomena that indicate specific psychological abnormalities, *e.g.*, abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528(b). As indicate above, the extreme limitations imposed by Dr. Barnett conflicted with her own treatment notes reflecting mental status examinations showing largely normal findings in behavior, orientation, affect, form or thought, perception, memory/recall, concentration, fund of information, abstract thought, judgment, and insight, and few abnormal findings. Counsel has not directed the Court's attention to clinical observations by Dr. Barnett which would support her assessment.

Finally, the ALJ reasonably considered the extent to which plaintiff was able to care for a five-year-old child while maintaining a household. The ALJ determined that plaintiff's ability in this regard was inconsistent with Dr. Barnett's opinion that plaintiff could not maintain regular attendance and be punctual, respond to changes in the work setting, deal with normal work stresses, sustain an ordinary routine without special supervision, and complete a normal workweek. (Tr. 23). Counsel argues the ALJ erred with regard to this reason because plaintiff has help from his girlfriend in caring for the child. He also speculates that because plaintiff stated he takes naps during the day "somebody else would be watching this child." (Doc. 5 at 9 citing Tr. 52-53, 63). Aside from plaintiff's testimony, which the ALJ found less

18

than credible, counsel has not directed the Court to any other evidence to support his contention. The ALJ's consideration of plaintiff's ability to care for his grandson was one of a number of factors considered in assessing Dr. Barnett's opinion. The Court finds no error in the ALJ's consideration of plaintiff's daily activities, including caring for his grandson, is assessing his claim for disability.

For these reasons, the Court determines the ALJ properly weighed the medical opinion evidence and plaintiff's third assignment of error should be overruled.

### 3. The ALJ's credibility determination is supported by substantial evidence.

Plaintiff argues the ALJ erred in assessing plaintiff's credibility and allegations of pain. (Doc. 5 at 10-11). Plaintiff asserts the ALJ erred when he claimed plaintiff experienced pain relief using a lumbar roll; failed to consider the precipitating and aggravating factors of walking and standing on plaintiff's pain; considered plaintiff's past criminal history, daily activities, and smoking "only 10 cigarettes a day by the time of his hearing"; and failed to evaluate the side-effects of plaintiff's medications. *Id.*

The ALJ in this case gave an exhaustive account of the evidence is assessing the credibility of plaintiff's allegations of pain and limitations. (Tr. 17-20). The ALJ considered plaintiff's conservative treatment (Tr. 18); the absence of medical evidence showing an inability to ambulate and his lack of cooperation in physical examinations to allow a clear picture of his residual capacity (Tr. 18); his cessation of work for reasons unrelated to his physical or mental impairments (*i.e.*, prison) (Tr. 19); his daily activities (Tr. 19); his criminal history, which included crimes of moral turpitude indicating a reputation for dishonesty (Tr. 19); his continued cigarette smoking despite claims of shortness of breath (Tr. 19); and the "significant

inconsistencies" between in the functional reports submitted by plaintiff, his reports to his physicians, and his own testimony, including information about his work history, drug use, and even his own birthday (Tr. 20). While plaintiff points to evidence which arguably supports his credibility (Doc. 5 at 10), that fact alone does not signify the ALJ's finding is not supported by substantial evidence, and plaintiff ignores much of the evidence cited by the ALJ in support of his credibility finding. *See Quattlebaum v. Comm'r of Soc. Sec.*, 850 F. Supp.2d 763, 784 (S.D. Ohio 2011) ("even if substantial evidence would support the opposite conclusion, the Court must uphold the ALJ's credibility decision where, as here, it is supported by substantial evidence") (citing *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)).

Plaintiff's counsel has not presented evidence or legal authority explaining why the ALJ's consideration of plaintiff's criminal record in assessing the truthfulness of his claims was erroneous. Nor did the ALJ fail to consider precipitating and aggravating factors such as plaintiff's allegations that his pain was worse with prolonged standing and walking, but better on sitting. (Tr. 17). Plaintiff's continued smoking despite allegedly disabling chronic obstructive pulmonary disease and asthma is another factor which undermined his credibility and plaintiff's citation to out-of-circuit authority to the contrary is not persuasive. *See Singleton v. Astrue*, 832 F. Supp.2d 864, 872 n.3 (S.D. Ohio 2011) (citing *Sias v. Sec. of HHS*, 861 F.2d 475, 480 (6th Cir. 1988)).

Plaintiff also argues the ALJ erred "with regard to the daily activities there, as these are sedentary at best and done at Mr. Wooley's own pace" and "do not show an ability to work 40 hours a week." (Doc. 5 at 10). Counsel fails to present any evidence in support of this argument or explain how plaintiff's activities are "sedentary at best" or done at his own pace.

20

The Court therefore rejects this argument.

Plaintiff also argues his medications make him tired and affect his ability to stand or walk for purposes of performing light or medium work for 40 hours per week. Plaintiff cites to his own testimony that he falls asleep if he is "still for very long" and to Dr. Barnett's report indicating "sedation/lethargy" as side-effects of medication. (Doc. 5 at 11, citing Tr. 52, 753). Yet, this evidence fails to establish any connection between plaintiff's medications and his ability to walk or stand and plaintiff fails to point to any other evidence showing that his medications affect his ability to stand or walk. In addition, as discussed above, the ALJ's evaluation of Dr. Barnett's functional assessment and decision to give it little weight are supported by substantial evidence. Thus, plaintiff's argument is without merit.

The ALJ's decision sets forth in detail the reasons for his credibility finding and reflects consideration of the required factors in determining plaintiff's credibility, including his allegations of disabling pain. *See* 20 C.F.R. § 404.1529(c). In light of the ALJ's opportunity to observe plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk v. Sec. of HHS*, 667 F.2d 524, 538 (6th Cir. 1981). *See also Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997); *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir. 1987). Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter. Therefore, plaintiff's fourth assignment of error should be overruled.

#### 4. The ALJ erred by relying on the VE's testimony.

As his last assignment of error, plaintiff asserts the ALJ erred by relying upon flawed vocational testimony as the hypothetical questions presented to the VE failed to account for the numerous work limitations set forth in Dr. Barnett's assessment and plaintiff's use of a cane.

21

(Doc. 5 at 12). To the extent the ALJ declined to include the unsupported limitations in Dr. Barnett's assessment in his hypothetical questions to the VE, the Court finds no error. However, in light of the Court's finding that the ALJ failed to properly consider plaintiff's use of a cane in assessing plaintiff's RFC, the hypothetical questions presented to the VE do not properly reflect plaintiff's impairments and/or limitations. Accordingly, the ALJ erred by relying on this vocational testimony to carry his burden at Step 5 of the sequential evaluation process. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's impairments). Therefore, plaintiff's final assignment of error should be sustained.

**III. This matter should be reversed and remanded for further proceedings.**

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Sec. of HHS*, 17 F.3d 171, 176 (6th Cir. 1994). On remand, the ALJ should properly evaluate plaintiff's need for a cane and re-formulate plaintiff's RFC accordingly.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 1/16/13

Karen L. Litkovitz
United States Magistrate Judge

22

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TIMOTHY R. WOOLEY,                                    Case No. 1:11-cv-802
      Plaintiff,                                      Spiegel, J.
                                                       Litkovitz, M.J.

    vs

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).